UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JOHN PETERS** | **CIV. ACTION NO. 3:23-00453** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **STATE OF LOUISIANA** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant State of Louisiana, as supplemented. [docs. #8, 12]. The motion is opposed. [doc. #16].

For reasons assigned below, it is recommended that Defendant's motion be GRANTED.

### Background

Plaintiff John Peters ("Peters") filed the instant complaint for damages ("the Complaint") against the State of Louisiana ("the State") on April 6, 2023. Complaint [doc. #1]. On June 27, 2023, the State filed the instant motion. M/Dismiss [doc. #8]. In response, the Complaint was supplemented by an amended complaint ("the Amended Complaint"), filed on July 17, 2023. Amended Complaint [doc. #10]. Thus, the Amended Complaint is the operative pleading.

Peters, a Caucasian male, seeks damages from the State arising from alleged racial discrimination resulting in constructive discharge in violation of Title VII of the Civil Rights Act of 1964. Amended Complaint [doc. #10, p. 9].

Peters was formerly an employee of the State, through the Department of Public Safety and Corrections, Office of State Police. He served in the Louisiana State Police ("LSP") for twenty-seven years, achieving the rank of captain, prior to his resignation in July 2021.

Amended Complaint *Id.* at p. 2.  LSP is a law enforcement agency of the State.  *Id.*  LSP is organized into "Troops" which are located throughout the state, and each Troop is identified by a letter of the alphabet.  *Id.*  During all relevant times, there were nine troops:  Troops A,B,C, D, E, F, G, L, and I.  *Id.*

Colonel Lamar Davis ("Col. Davis"), a Black male, was appointed Superintendent of the LSP in October 2020.  *Id.*  In February 2021, after taking office, Col. Davis declared that he would purge the "culture problem" of "racist policing" in Troop F.  *Id.*  At that time, Peters served as the Commander of Troop F.  He alleges that, once in the position of Superintendent, Col. Davis "engaged in acts calculated to result in the termination of [Peter]'s employment," including "re-assigning [Peters] to a career-ending position, authorizing Internal Affairs investigations of stale, time-barred allegations, having [Peters] placed under surveillance, and allowing leaks about the Internal Affairs investigations about [Peters] that falsely portrayed [him] as racist and exposed [Peters] and his family to danger."  *Id.* at p. 3.

First, on an unspecified date after February 2021, Col. Davis reassigned Peters from his position as Commander of Troop F to a position in the Weights and Standards Division.  *Id.*  This was "not a demotion in rank," but Peters alleges that it was "a demotion in title and prestige" and "a barrier to all future promotions."  *Id.*

Shortly thereafter, again on an unspecified date, Peters became the subject of an Internal Affairs investigation concerning a potential policy violation from the previous year.  *Id.*  Peters alleges that Col. Davis had enacted "unwritten policies and protocols by which all alleged policy violations committed by white troopers involving Black suspects were presumptively criminal acts."  *Id.*  He further alleges that this policy was "manifest" in Internal Affairs investigations conducted under Col. Davis' leadership.  *Id.* at pp. 3-4.

The investigation into Peters concerned allegations that he had failed to review a traffic stop video documenting use of force. *Id.* at p. 4. Peters alleges that LSP rules do not require a commander in his position to review such a video unless a patrol supervisor submits it for evaluation of potential policy violations. *Id.* He further alleges that a Black commander of another troop "was found to have engaged in the same practice of having patrol supervisors review the videos." *Id.* The Black commander was not disciplined for this conduct, but Peters was. *Id.* Other than the fact of the investigation itself, Peters does not allege how he was disciplined.

Peters also alleges that around this time the LSP began surveilling him and his family "in an attempt to catch him breaking a rule or violating a policy so disciplinary proceedings could be initiated." *Id.*

On June 21, 2021, Peters was notified that he was the subject of a second Internal Affairs investigation. *Id.* at pp. 4-5. Sometime thereafter, Peters became aware of news reports claiming that Peters was "trying to cover up for an officer who had been accused of misconduct in a traffic arrest that resulted in the death of a Black male driver." *Id.* at p. 5. The information behind this report was obtained from leaked internal LSP emails. *Id.*

On July 29, 2021, Peters submitted a complaint to Internal Affairs concerning the leak. *Id.* at p. 6. Internal Affairs Captain Treone Larvadaine ("Capt. Larvadaine"), a Black female, declined to initiate an investigation. *Id.* at p. 7. Peters alleges that, although there were only four individuals that could have leaked the emails, Capt. Larvadaine claimed to have "no 'starting point' and thus could not [conduct the] investigat[ion]." *Id.* He further alleges that Capt. Larvadaine investigated leaked statements of a Black sergeant concerning the death of a Black motorist, a process which included interviews with thirty individuals. *Id.*

Following this series of events, Peters resigned from the LSP "to protect himself and his family." *Id.*

Peters filed his initial complaint on April 6, 2023. Complaint [doc. #1]. On June 27, 2023, the State moved to dismiss the action. M/Dismiss [doc. #8]. The State predicated its motion on the arguments that Peters fails to state both a discrimination claim and a constructive discharge claim. Memorandum in Support of M/Dismiss [doc. #8-1, pp. 3-14].

Less than a month later, on July 17, 2023, Peters filed the Amended Complaint. [doc. #10]. Shortly thereafter, the State filed a supplemental memorandum concerning the motion to dismiss, arguing that the amended pleading failed to address the defects of the original Complaint. Supplemental Memorandum in Support of M/Dismiss [doc. #12].

Peters filed his opposition to the motion on September 5, 2023, arguing that he has sufficiently pleaded his claims, and Defendant's prior arguments are predicated upon a faulty legal standard. Opposition to M/Dismiss [doc. #16]. On September 12, 2023, the State responded with a reply memorandum. Reply to Opposition to M/Dismiss [doc. #17]. Therein, the State reiterates arguments concerning the defects of Peters' claims and contests the legal standard relied upon by Peters. *Id.* at pp. 1-10.

Briefing is complete. Accordingly, this matter is ripe.

## Analysis

I.  *Legal Standard*

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim," *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010), but "[t]hreadbare recitals" of those elements "supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678. All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). Legal conclusions couched as factual allegations need not be accepted as true. *Iqbal*, 556 U.S. at 678.

II. *Title VII*

Peters has brought claims of race-based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Amended Complaint [doc #10, p. 9]. Specifically, Peters alleges that the State "discriminated against [him] on the basis of his race and constructively discharged him."[1] *Id.* When faced with a Rule 12(b)(6) challenge, a Title VII plaintiff must allege facts plausibly showing "(1) an adverse employment action (2) taken against [the] plaintiff because of [his] protected status." *Hamilton v. Dallas County*, 79 F.4th 494, 502 (5th Cir. 2023).

"At the pleading stage, a plaintiff need not plead a prima facie case" under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *Hamilton*, 79 F.4th at 502 n.45. This is true, at least in part, because a plaintiff need not resort to use of the *McDonnell Douglas* if he has or develops direct evidence of discrimination. That is, a plaintiff may ultimately prove his case through the use of direct **or** circumstantial evidence.

---

[1] The claims against the State are based upon the alleged conduct of Col. Davis described *supra*.

5

*Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1212 (5th Cir. 2021) ("*McDonnell Douglas* cannot be dispositive at this stage – and it is not guaranteed *McDonnel Douglas* will ultimately apply, as discovery may reveal direct evidence . . . ."). Nonetheless, the *McDonnell Douglas* framework "is sometimes helpful to frame the analysis . . . to determine whether a plaintiff has been discriminated against *because of* a protected characteristic." *Id.* (emphasis in original).[2]

As Peters has failed to plausibly allege an adverse employment action, the undersigned's analysis is limited to that prong of the pleading requirement.

To successfully plead an adverse employment action, a plaintiff must allege facts plausibly showing discrimination in hiring, firing, compensation, or in the terms, conditions, or privileges of his employment. *Hamilton*, 79 F.4th at 502-03. Constructive discharge qualifies as an adverse employment action under Title VII. *See Brown v. Kinney Show Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge."). To prove constructive discharge, a plaintiff must "establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Herring v. Buc-ee's Ltd.*, No. 23-20070, 2023 WL 5031491, at *1 (5th

---

[2] The *McDonnell Douglas* paradigm is typically used at the summary judgment stage. *See, e.g., Paugh v. Lockheed Martin Corp.*, No. 21-50472, 2023 WL 417648 (5th Cir. Jan. 26, 2023) (analyzing summary judgment of Title VII discrimination claims based on circumstantial evidence through *McDonnell Douglas* framework). However, *Hamilton* continues the Fifth Circuit's long-standing approval of reference to *McDonnell Douglas* in the motion to dismiss context. *See Chhim v. University of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although [the plaintiff] did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts of all of the ultimate elements of a disparate treatment claim to make his case plausible. In that inquiry, it can be helpful to reference the *McDonnell Douglas* framework, on which [the plaintiff] would continue to rely if he based his claim on circumstantial evidence . . . .") (citations omitted). *McDonnell Douglas* requires a showing that the plaintiff (a) is a member of a protected group; (b) was qualified for the position at issue; (c) suffered an adverse employment action by the defendant-employer; and (d) was (i) replaced by someone outside the protected group or (ii) treated less favorably than other similarly situated employees outside the protected group. *Paugh*, 2023 WL 417648, at *3.

Cir. Aug. 7, 2023). Constructive discharge requires a "greater degree of harassment than that required by a hostile [work] environment claim."[3, 4] *Brown*, 237 F.3d at 566. In assessing whether a reasonable employee would be compelled to resign, courts may consider allegations of (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.*

Here, Peters argues that his alleged constructive discharge constitutes the adverse employment action underlying his Title VII claim. *See* Opposition to M/Dismiss [doc. #16, pp. 4-6]. A review of the seven relevant factors, as well as the factual allegations as a whole, indicates that Plaintiff has failed to sufficiently allege an adverse employment action.

---

[3] To determine whether a workplace constitutes a hostile work environment, courts consider the frequency of discriminatory conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating, or "a mere offensive utterance"; and whether the conduct unreasonably interferes with the plaintiff's work performance. *Whitlock v. Lazer Spot, Inc.*, 657 F.App'x 284, 287 (5th Cir. 2016) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). The unlawful practice must occur over a series of days or years and, "in contrast to discrete acts, a single act of harassment may not be actionable on its own." *Whitlock*, 657 F.App'x at 287 (quotations omitted).

[4] Although Peters refers to a hostile work environment claim in his opposition memorandum, he did not assert such a claim in the Complaint or Amended Complaint. *See* Opposition to M/Dismiss [doc. #16, p. 6] ("Plaintiff has a claim for hostile working environment whether he was constructively discharged or not . . . ."). Peters cannot raise this claim for the first time in his opposition memorandum. *See Estes v. JP Morgan Chase Bank, Nat. Ass'n*, 613 F.App'x 277, 280 (5th Cir. 2015) (holding district court did not err in declining to consider allegations first raises in opposition to motion to dismiss because trial courts considering motions under Rule 12(b)(6) generally "must limit [analysis] to the contents of the pleadings, including attachments thereto."). Accordingly, it would be inappropriate to consider this putative claim *sua sponte*. Should Peters wish to pursue a hostile work environment claim, he may move to amend his pleadings during the period for objections to this Report and Recommendation.

*A. Demotion*

"To establish a demotion, an employee must show a loss in duties, benefits, or compensation." *Peterson v. City of Dallas*, 135 F'Appx 635, 638 (5th Cir. 2005). Reassignment from a "prestigious" position to a less desirable one is insufficient to establish an adverse employment action. *Id.* The plaintiff's subjective perception that a demotion has occurred is similarly insufficient. *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996).

Here, Peters alleges he was effectively demoted from commander of Troop F to a position in the "weights and standards division." Amended Complaint [doc. #10, p. 3]. Peters readily admits that this was "not a demotion in rank." *Id.* Instead, he argues that the reassignment was "a demotion in title and prestige" that was "career-ending." *Id.* A subjective perception that a new position is less prestigious is not a legally sufficient basis to establish that Peters was compelled to resign. Accordingly, it would be improper to find that he plausibly alleges a demotion leading to constructive discharge that constituted an adverse employment action.

*B. Reduction in Salary*

As Peters has not make any allegations concerning a reduction in his salary, there is no plausible basis for constructive discharge based upon this factor.

*C. Reduction in Job Responsibilities*

Here, Peters makes no allegations concerning differences in responsibility between his position in Troop F and that in the Weights and Standards Division. Nor are there any allegations that Peters' former position required more or different qualifications or experience than his reassigned posting.

Reduction in job responsibilities has been shown by reassignment of a college-educated "executive manager" with thirty years of experience to an "entry level warehouse supervisor" position requiring "no more than one year's experience." *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1140, 45 (5th Cir. 1991). Conversely, allegations concerning reassignment of a long-tenured, positively reviewed Assistant Director to "janitorial duties" were insufficient absent details concerning *how* the reassignment was materially adverse. *Wheat v. Florida Parish Juvenile Justice Comm'n*, 811 F.3d 702, 704, 06-07 (5th Cir. 2016). Peters' failure to allege any difference between the Troop F and Weight and Standards positions makes a finding that Peters was compelled to resign based upon a reduction in responsibilities implausible. Accordingly, it is improper to find an adverse employment action on that basis.

*D. Menial or Degrading Work*

Reassignment to menial or degrading work may be demonstrated by allegations that the new work was menial compared to either the plaintiff's old work or the workplace. *See Esquivel v. CoreCivic, Inc.*, No. SA-19-CV-00143, 2020 WL 7342663, at *9 (W.D.Tex. Dec. 14, 2020) (enunciating this framework for application in summary judgment context) (citing *Wilson*, 939 F.2d 1138; *Wheat*, 811 F.3d 702). Degrading work may be shown through allegations that the work "is accompanied by severe and very public humiliation." *See Esquivel*, 2020 WL 7342663, at *9 (applying this standard to the summary judgment context) (citing *Wilson*, 939 F.2d 1138; *Wheat*, 811 F.3d 702).

Here, there are no allegations that Peters' new position in the Weights and Standards Division was menial, compared to either the Troop F position or any other position at the LSP. Nor are there allegations that Peters faced mocking or embarrassment because of his reassignment. Indeed, there are no allegations that indicate it was inappropriate, out of the

9

ordinary, or humiliating to assign a twenty-seven-year veteran to command the Weights and Standards Division. The only potentially relevant allegations, discussed *supra*, are that the new position was "a demotion in title and prestige" that created "a barrier to all future promotions." Amended Complaint [doc. #10, p. 3]. A subjective personal perception that Peters had been assigned a less prestigious position does not suffice to plausibly demonstrate that his reassignment was severely humiliating in a very public manner. Absent more, such as allegations concerning humiliating incidents or organizational conventions for posting veteran troopers, it is implausible that Peters was subjected to menial or degrading work that compelled him to resign.

### E. Work Under a Younger Supervisor

As Peters does not make any allegations concerning reassignment to a position with a supervisor younger than him, there can be no finding of a constructive discharge based upon this factor.

### F. Badgering, Harassment, or Humiliation

The sixth factor – badgering, harassment, or humiliation calculated to encourage resignation – requires allegations showing not just harassment, but also calculation to encourage resignation because of that harassment. *See Lauderdale v. Texas Dept. of Crim. Just.*, 512 F.3d 157, 167 (5th Cir. 2007) (requiring a showing of both harassment and calculation to encourage resignation at summary judgment stage). Such calculation may be shown by allegations of "an employer's 'invidious intent to create or perpetuate the intolerable conditions compelling resignation.'" *Id.* (quoting *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004)).

Here, Peters alleges that Col. Davis "engaged in acts calculated to result in the termination of Peters' employment." Amended Complaint [doc. #10, p. 3]. However, there are no allegations that the specific actions Col. Davis were calculated to result in Peters' termination; the Complaint and Amended Complaint assert Col. Davis' calculation generally, but do not cast it as the driving force behind discrete actions. A mere recitation of a pleading requirement is insufficient to move an allegation into the realm of plausibility. Nonetheless, Peters does describe four incidents allegedly meant to push him to resign: (1) Peters' reassignment to a career-ending position; (2) Internal Affairs investigations into Peters; (3) surveillance of Peters by the LSP; and (4) a leak of information related to one of the Internal Affairs investigations. *Id.*

The insufficiency of Peters' arguments concerning his reassignment are discussed above, but it bears emphasizing that none of his allegations concerning this event discuss any intent by Col. Davis to push Peters to resign. The undersigned notes that she is aware of the Fifth Circuit's decision in *Jurgens v. E.E.O.C.*, 903 F.2d 386 (5th Cir. 1990). In that decision, the plaintiff argued that the denial of a promotion could constitute a constructive discharge. In rejecting that claim, the Fifth Circuit explained: "We find no support in the case law for the proposition that a simple discriminatory denial of promotion **that cannot be reasonably construed as a career-ending action** can alone create such embarrassment or humiliation that the denial comprises a constructive discharge." *Id.* at 392 (emphasis added). Even if a position is "subjectively undesirable," as long as it "was not inherently demeaning," such allegations were insufficient to support a claim of constructive discharge.[5] *Id.* Thus, the case law suggests

---

[5] The position in *Jurgens* was assigned as part of a race-neutral reorganization, but, nevertheless, the Fifth Circuit's focus was on the demeaning nature of the assignment, not its subjective undesirability.

11

that, in certain circumstances, a "career-ending action" might create the embarrassment or humiliation necessary to constitute a constructive discharge.

In this case, however, Peters was not denied a promotion, but in fact remained a captain with the LSP and was laterally assigned a different command, Weights and Standards. His use of the words "career-ending" do not transform the assignment into the type of demeaning action necessary to constitute constructive discharge.

Peters' pleadings concerning the Internal Affairs investigations are similarly devoid of allegations concerning any calculation to compel resignation. While these pleadings plausibly lay out investigations into Peters that were procedurally irregular, they do not contain any allegations that these irregularities were made with Col. Davis' involvement, nor that they were made with the required invidious intent. The undersigned also notes that Peters' allegations concerning the "unwritten policies and protocols" supposedly behind the investigations are too threadbare to pass into the realm of plausibility. Merely asserting that an unwritten policy exists is implausible absent additional supporting allegations, such as a pattern of similar investigations or ancillary conduct evidencing the policy.

Concerning the LSP's alleged surveillance of Peters and his family, Plaintiff alleges that the surveillance was conducted "to catch him breaking a rule or violating a policy," suggesting that the State hoped to find a basis to terminate him. However, there are no allegations that such surveillance was conducted pursuant to Col. Davis' direction or with the intent to drive Peters to resign.

Finally, the alleged leak of information from the Internal Affairs investigation again fails to evidence Col. Davis' involvement or invidious intent. While Peters does plausibly allege that

the leaked information came from within the LSP, he fails to allege that there was the requisite intent behind that action.

Peters' allegations are indeed concerning, but this Court is bound to follow Fifth Circuit precedent, and the undersigned finds that the facts, as alleged, fail to survive the Rule 12(b)(6) challenge.  Should Peters opt to amend his pleadings, he may specifically allege that Col. Davis instigated the four above-discussed incidents with the calculated intent to push Peters to resign; absent such allegations, it is implausible that these incidents compelled Peters to do so.

To further underline this point, it is worth noting that Peters has not alleged conduct more severe than that which would constitute a hostile work environment.  There are no allegations about the frequency of LSP's surveillance of Peters, and the other alleged misconduct is limited to three discrete incidents over the course of more than a year.  The allegations do not portray exceedingly severe mistreatment, nor do they show that any of the alleged harassment was physically threatening or humiliating.[6]  Finally, there are no allegations that the putative harassment unreasonably interfered with Peters' work.  Accordingly, it would be incongruent to find that Peters has pleaded constructive discharge via badgering, harassment, or humiliation.

*G. Offers of Early Retirement or Less Favorable Terms*

As Peters does not make any allegations concerning offers of early retirement or less favorable employment terms, constructive discharge based upon this factor is implausible.

---

[6] Peters' allegation that "Col. Davis engaged in acts [that] exposed Peters and his family to danger," Amended Complaint [doc. #10, p. 3], is insufficient to plausibly show that he was physically threatened.  There is no description of what form of danger Peters and his family faced nor who exactly posed that danger.

Because Peters has failed to sufficiently allege facts showing that he was compelled to resign, he has not successfully pleaded that he was constructively discharged. Peters has thus failed to plead an adverse employment action.[7]

Accordingly, it is RECOMMENDED that Peters' claims be dismissed with prejudice.

### Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that State's motion to dismiss [doc. #8], be **GRANTED**, and that Peters' claims under Title VII be **DISMISSED WITH PREJUDICE**, subject to his right to amend his complaint a second time, as well as asserting objections to this Report and Recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM**

---

[7] Peters' discrimination claim flows from his constructive discharge claim. As the adverse employment action underlying his discrimination claim is the alleged constructive discharge, failure to plead the latter necessarily defeats attempts to plead the former.

14

**ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 10th day of January, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE